# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARBARA G. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-204-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Barbara G. Smith requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-seven years old at the time of the most recent administrative hearing (Tr. 62, 1312). She completed high school and has worked as a fork-lift industrial truck operator (Tr. 128, 319). The claimant alleges she has been unable to work since an amended onset date of January 15, 2003, due to back/spine/ankle injuries, headaches, and leg numbness (Tr. 123).

## Procedural History

On August 26, 2005, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Kim Parrish conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated June 19, 2007 (Tr. 311-321). The Appeals Council vacated the hearing decision and remanded the case to the ALJ on January 30, 2009 (Tr. 323-325). On remand, ALJ Parrish held a second administrative hearing and determined on November 3, 2009 that the claimant was entitled to a closed period of disability, from January 15, 2003 through July 7, 2005, but was not disabled beginning July 8, 2005 (Tr. 727-738). The claimant appealed the portion of the ALJ's decision denying benefits beginning July 8, 2005 and the Appeals Council denied review, but this Court reversed in Case No. CIV-10-391-SPS, and remanded with instructions to properly consider the "other source" opinion of the claimant's Physician's

Assistant, Peggy Atwood. On remand, ALJ Larry Shepherd held another administrative hearing and again determined in a written opinion dated August 26, 2013 that, from July 8, 2005, the claimant was not disabled (Tr. 709-721). The Appeals Council again remanded the case to the ALJ, and ALJ Shepherd again held an administrative hearing and again determined that the claimant was not disabled in a written opinion dated August 12, 2016 (Tr. 692-704). The Appeals Council then denied review, so ALJ Shepherd's 2016 decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to essentially perform sedentary work, *i. e.*, she could lift/carry ten pounds occasionally and less than ten pounds frequently, sit for six hours in an eight-hour workday, and stand/walk two hours in an eight-hour workday. Additionally, he found that she could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but that she could not climb ladders, ropes, or scaffolds. Finally, he limited her to unskilled work due to her migraines (Tr. 700). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, food and order clerk, table worker, and bench hand (Tr. 719-720).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the treating source physician opinion of Dr. Wellie Adlaon and the other source opinion of Ms.

-4-

Peggy Atwood, and (ii) failing to properly assess her pain as a disabling impairment. The Court finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease status post lumbar fusion and hardware removal, status post right ankle surgery, obesity, diabetes mellitus, kidney stones, and meniscus tear and degenerative joint disease in the left knee status post-surgical repair, as well as the nonsevere impairments of depression and chronic obstructive pulmonary disease (Tr. 695-697, 701). The relevant medical evidence reflects that the claimant was injured at her job in 2001, and an MRI of the lumbar spine in 2003 revealed bilateral spondylolysis at L5-S1 with central canal and neural foraminal narrowing, as well as degenerative disc disease at L4-5 and with left paracentral bulge at T10-11 (Tr. 163). She underwent lumbar spinal injections first (Tr. 165), then spinal surgery on July 13, 2004 (Tr. 190) and subsequent hardware removal on May 26, 2005 (Tr. 206-209). The claimant's surgeon, Dr. James Odor, released the claimant at maximum medical improvement on July 6, 2005, noting that she had a future restriction of no repetitive bending, twisting, or lifting greater than ten pounds (Tr. 211).

Dr. J. Arden Blough examined the claimant as part of her worker's compensation claim and found that she had a temporary total disability from January 15, 2003 through July 7, 2005. He found she had suffered some permanent whole person partial impairments to the thoracic and lumbar spines, resulting in restricted ranges of motion and weakness (Tr. 235). He further stated that she would be an excellent candidate for vocational rehabilitation to help train her in a job consistent with her physical limitations (Tr. 230).

On January 29, 2008, the claimant underwent an arthroscopic left knee partial medial meniscectomy to treat a left medial meniscal tear (Tr. 412). She then underwent physical therapy through May 2008, at which time she was noted to be progressing through goals appropriately and voicing minimal complaints (Tr. 450).

The claimant largely received treatment at the Family Health Center of Southern Oklahoma beginning in July 2006, with Physician's Assistant Peggy Atwood and Dr. Willie Adlaon. Treatment notes largely focused on management of diabetes and weight, but also reflect reports of back pain in 2006, as well as reports of knee pain in 2007, and one report of knee pain following the left knee arthroscopy in 2008 (Tr. 281-292, 510-525).

The claimant also has a history of kidney stones, and in February 2011 was hospitalized with bilateral renal stones and again in August 2011 (Tr. 940). In September 2011, she underwent removal of three renal stones and removal of a stent (Tr. 1032), then underwent removal of another renal stone in January 2012 (Tr. 1045). She had a left kidney nephrectomy on January 13, 2016 (Tr. 1305).

On March 6, 2007, the claimant's treating physician from Family Medical Center of Southern Oklahoma, Dr. Willie Adlaon, completed a physical Medical Source Statement ("MSS"), in which he indicated that the claimant could lift/carry less than ten pounds frequently and ten pounds occasionally, that she could stand/walk less than one hour in an eight-hour workday and only for thirty minutes continuously, and that she could sit less than one hour in an eight-hour workday and for one hour continuously (Tr. 279). He further found that she could only occasionally reach, handle, finger, and feel, and that she could never climb, balance, stoop, kneel, crouch, or crawl (Tr. 280). In support, he referenced

-6-

the claimant's lower back spasms and previous back surgery (Tr. 280). He indicated that his opinion applied from July 8, 2006 through the date of his opinion (Tr. 280).

On September 19, 2009, Physician's Assistant Peggy Atwood completed a physical MSS in which she indicated that the claimant could lift/carry less than ten pounds frequently and occasionally, stand/walk less than two hours in an eight-hour workday and only thirty minutes continuously, and sit less than two hours in an eight-hour workday and only for fifteen minutes continuously (Tr. 607). She found the claimant could frequently feel, occasionally reach, handle, and finger, and never climb, balance, stoop, kneel, crouch, or crawl (Tr. 608). In support, she cited the MRI of the claimant's torn meniscus and the MRI of the claimant's lumber spine fusion at L4-L5 and L5-S1 (Tr. 608). She indicated that her opinion applied from 2006 through the present (Tr. 608).

On December 11, 2003 (prior to the claimant's back surgery), a state reviewing physician found that the claimant was capable of lifting ten pounds occasionally and less than ten pounds frequently, that she could stand/walk two hours in an eight-hour workday, and sit about six hours in an eight-hour workday, and that she was limited to occasional postural limitations except that she could never climb ladders/ropes (Tr. 181-182). On November 8, 2005 (following her back surgeries), Dr. Luther Woodcock reviewed the claimant's records and found that she could lift/carry ten pounds occasionally, less than ten pounds frequently, and that she could stand/walk and sit six hours in an eight-hour workday, that she could only occasionally stoop, and that she could frequently climb, balance, kneel, crouch, and crawl (Tr. 269-270).

In August 2008, Dr. Woodcock again reviewed the claimant's records and determined that the claimant could lift/carry twenty pounds occasionally and ten pounds frequently, and that she could stand/walk and sit six hours each in an eight-hour workday (Tr. 582). He further found she could only occasionally climb, but that she could frequently balance, stoop, kneel, crouch, or crawl (Tr. 583). His opinion was affirmed upon reconsideration (Tr. 587).

At the administrative hearing, the ALJ called on Dr. John Kwock to opine on the claimant's physical limitations. Dr. Kwock found that the claimant could perform light work, *i. e.*, she could lift/ carry up to twenty pounds occasionally and ten pounds frequently, sit up to seven hours in an eight-hour workday, and stand/walk six hours in an eight-hour workday (Tr. 1325). He further found she could never climb ladders/ropes/scaffolds or crawl, but that she could occasionally balance, stoop, and kneel on the left, and that she could frequently climb ramps/stairs, kneel on the right, and crouch (Tr. 1325).

In his most recent written opinion, ALJ Shepherd summarized the claimant's administrative hearing testimony, as well as the medical evidence of record. As relevant to this appeal, the ALJ noted that the claimant wore a back brace, knee brace, and ankle brace to the hearing, although none had been prescribed, and he further found that the claimant's statements were "not entirely credible for the reasons explained in this decision" (Tr. 701). The ALJ gave great weight to the state reviewing physician opinions finding that the claimant could perform sedentary work with occasional stooping, in light of the claimant's back surgery (Tr. 701). He noted that the claimant's surgeon had only imposed the limitation related to repetitive bending, twisting, and lifting greater than ten pounds

-8-

(Tr. 701). He assigned "some weight" to the state reviewing opinion that the claimant could perform light work, but found the claimant was more limited (although not precluded from work), and more restricted in her postural limitations, in light of her back and knee surgeries (Tr. 702). He assigned little weight to Dr. Adlaon's opinion, finding it not supported by medical evidence, x-rays, or examination notes, nor other examinations or opinions, including the claimant's surgeon who had released her and opined she could return to her work as a waitress (Tr. 702). He further noted the claimant's subsequent (to Dr. Adlaon's opinion) left knee surgery, but that physical therapy reports indicated pain but a normal range of motion and that she could ambulate independently with normal gait (Tr. 702). He also assigned little weight to Ms. Atwood's "other source" opinion, finding it unsupported by other medical evidence, x-rays, and examination notes, and in fact in contradiction to her September 2008 treatment notes indicating that the claimant's gait and station were within normal limits (Tr. 702). Finally, he gave great weight to Dr. Kwock's opinion that the claimant was not disabled, but only some weight to his opinion that she could perform light work because he found her further limited than that (Tr. 702).

The claimant asserts that the ALJ erred in assessing Dr. Adlaon's MSS opinion. The Court finds no error here. The ALJ was required to give Dr. Adlaon's opinion controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that his opinion was not entitled to controlling weight, he was nevertheless required to determine the proper

weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject any of Dr. Adlaon's medical opinions entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Here, the ALJ's treatment of the medical evidence and Dr. Adlaon's opinion in this case meets these standards. The claimant contends that the ALJ's assignment of "little weight" to his opinion implies a rejection of her severe impairment of degenerative disc disease. He further erroneously contends that Dr. Adlaon's opinion should be given greater weight because it was in contrast to the ALJ's own assessment that the claimant could perform sedentary work. But the ALJ relied on other opinions in the record, as well as the medical evidence following the claimant's surgeries in finding she could perform sedentary work, not on his own opinion. The Court thus finds that the ALJ properly considered Dr.

Adlaon's opinion, along with all the other opinions in the record in concert with the medical evidence in accordance with the proper standards and concluded that his opinion was entitled to little weight.

The claimant further asserts that the ALJ erred in evaluating Ms. Atwood's opinion. Social Security regulations provide for the proper consideration of "other source" opinions such as those provided in this case. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact, (ii) whether the opinion is consistent with other evidence, (iii) the extent the source provides relevant supporting evidence, (iv) how well the source's opinion is explained, (v) whether claimant's impairment is related to a source's specialty or area of expertise, and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ's treatment of Ms. Atwood's opinion met these standards. When all the evidence is taken into account, the Court is satisfied that the ALJ's conclusion that the claimant could perform the assigned RFC is supported by substantial evidence.

Finally, the claimant contends that the ALJ erred in analyzing her subjective statements, particularly as related to her pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In this case, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, the ALJ noted inconsistencies between the claimant's testimony and: (i) the management of her impairments following her back surgeries, including the only limitation imposed by Dr. Odor being related to repetitive movements and lifting over ten pounds; (ii) her pain with range of motion but that she nevertheless retained full range of motion and could ambulate independently with a normal gait; and (iii) after reaching maximum medical treatment, her surgeon and Dr. Bough both made reference to the claimant returning to work, either at her past job as a waitress or following vocational rehabilitation (Tr. 701-702). Accordingly,

the ALJ's determination is entitled to deference and the Court finds no error in analyzing the claimant's subjective statements.

The ALJ specifically noted every medical record available in this case, gave reasons for her RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 5th day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**